ARMED SERVICES BOARD OF CONTRACT APPEALS

| | |
|---|---|
| Appeal of -- | ) |
| | ) |
| Thunderstruck Signs | ) ASBCA No. 61027 |
| | ) |
| Under Contract No. FA4855-15-P-0136 | ) |

APPEARANCE FOR THE APPELLANT:      Mr. Jason Mock
    President

APPEARANCES FOR THE GOVERNMENT:      Jeffrey P. Hildebrant, Esq.
    Air Force Deputy Chief Trial Attorney
    Lt Col Nathaniel H. Sears, USAF
    Trial Attorney

OPINION BY ADMINISTRATIVE JUDGE WOODROW

This appeal arises from a contracting officer's termination for cause for a contract between appellant Thunderstruck Signs and the government to manufacture and deliver facility signs to Cannon Air Force Base, New Mexico. The parties have elected to proceed under the Board's Rule 12.3 Accelerated Procedures and also to waive a hearing and submit its case upon the record pursuant to Board Rule 11. The only matter before the Board is whether the Air Force's termination of the contract for cause was proper.

SUMMARY FINDINGS OF FACT

I.     **The Contract**

1. The United States Air Force (Air Force or government) awarded a firm-fixed-price, commercial item contract, No. FA4855-15-P-0136, to Thunderstruck Signs (appellant or Thunderstruck) on 16 September 2015 for $47,791.16. The contract required Thunderstruck to supply six facility signs to Cannon Air Force Base (AFB). (R4, tab 3 at 3) The contract specified a delivery date of 16 October 2015 (*id.* at 6). According to its proposal, Thunderstruck would remove and dispose of the existing signs and supply and install the new signs (*id.* at 3).

2. The contract incorporated by reference the standard commercial item contract clause, Federal Acquisition Regulation (FAR) 52.212-4, CONTRACT TERMS AND CONDITIONS—COMMERCIAL ITEMS (MAY 2015) (R4, tab 3 at 8).

3. Paragraph (f) of the clause, entitled Excusable delays, states in relevant part that the contractor:

[S]hall be liable for default unless nonperformance is caused by an occurrence beyond the reasonable control of the Contractor and without its fault or negligence such as, acts of God or the public enemy, acts of the Government in either its sovereign or contractual capacity, fires, floods, epidemics, quarantine restrictions, strikes, unusually severe weather, and delays of common carriers.

4. Paragraph (m) of the clause addresses termination for cause, and permits the government to "terminate [the] contract, or any part hereof, for cause in the event of any default by the Contractor, or if the Contractor fails to comply with any contract terms and conditions." Paragraph (m) also provides that if it is "determined that the Government improperly terminated [the] contract for default, such termination shall be deemed a termination for convenience."

## II. Performance Period

5. On 8 October 2015, eight days prior to the contract delivery date, Thunderstruck emailed the Air Force stating that "[w]e will need artwork for all signs to be sent at your leisure. These signs generally take 5-7 [sic] to manufacture and install." (R4, tab 4 at 1) The Air Force did not provide the artwork by 16 October 2015, nor did Thunderstruck deliver the signs by that date.

6. On 26 October 2015, Thunderstruck again requested the Air Force to "send us the artwork for the signs as construction is progressing nicely" (R4, tab 5 at 1).

7. On 5 November 2015, the Air Force provided the artwork to Thunderstruck (R4, tab 7 at 1-2).

8. On 12 January 2016, the Air Force contacted Thunderstruck and requested an "update on the timeline for the outdoor signs," and asked, "When will we expect an installation date?" Thunderstruck responded the same day that "the third of six cans" was completed and the fourth "almost complete." (R4, tab 8 at 1-3)

## III. Initial Show Cause Notice

9. On 28 January 2016, the Air Force issued a Show Cause Notice informing Thunderstruck that the Air Force was considering terminating the contract for cause. Additionally, the Show Cause Notice requested that Thunderstruck submit a "detailed timeline for installation" and stated that "[t]he Contractor should install the signs that are currently available within two weeks from today." (R4, tab 9 at 1-2)

2

10. On 4 February 2016, Thunderstruck responded to the Show Cause Notice stating that the "response to the RFQ on the quotation from our business clearly stated each can takes 4 to 6 weeks to construct" (R4, tab 13). Attachment 1 to the Show Cause response is Thunderstruck's response to the RFQ, titled: "Quotation & Purchase Contract," dated 12 September 2015. The final sentence in the section titled "Description" states that "Each can takes 4 to 6 weeks." (R4, tab 12 at 1)

11. Thunderstruck further indicated the signs would be "finished within the timeframe originally bid (24 weeks)" and that all the work would be "complete[d] by April 13 2016" (R4, tab 13 at 1).

12. On 17 February 2016, the Air Force again requested Thunderstruck to provide a detailed timeline for the installation of the signs and to install all signs "currently available" by 24 March 2016 (R4, tab 14 at 1).

13. On 29 March 2016, Thunderstruck told the Air Force that "Four signs are complete" and the remaining two signs would be complete in "5 to 6 week turns each," or "between June 7-15th" (R4, tab 17 at 6-7).

## IV.    Bilateral Modification of Completion Date

14. On 4 April 2016, the parties executed a bilateral modification to the contract, which extended the completion date from 16 October 2015 to 15 June 2016 (R4, tab 18 at 2).

15. By 15 June 2016, Thunderstruck had not delivered the signs to Cannon AFB.

16. On 17 June 2016, Thunderstruck wrote to the Air Force requesting specific information on the pole size for one of the two signs that was still under construction (app. supp. R4 at 1-2; R4, tab 24 at 1).

17. The manufacturer of the signs, located in Birmingham, Alabama, informed Thunderstruck that the signs would be complete and ready for shipment between 10 July and 24 July (R4, tab 24 at 1; app. resp. at 3).

18. On 22 June 2016, Thunderstruck informed the Air Force that it would take approximately another two weeks to deliver the signs and that the signs would be delivered on 11 July 2016, "[g]ive or take 3 days or so" (R4, tab 20 at 3).

19. On 12 July and on 14 July 2016, the Air Force asked about the status of the signs. Thunderstruck responded on 14 July 2016 that it was "waiting on the manufacturer" to provide a shipping date and that "the hold up was due to not getting the Pole size and paint color from your side until June 21st." (R4, tab 20 at 1)

3

20. On 21 July 2016, the manufacturer informed Thunderstruck that delivery would be delayed until the week of 25 July 2016 (app. resp. at 3).

21. On 21 July 2016, the Air Force requested the tracking information for the signs. Thunderstruck responded that "the truck is not available until next week sometime." (R4, tab 21 at 1)

22. On 25 July 2016, the contracting officer (CO) contacted Thunderstruck to determine when the signs would be delivered and installed. The CO informed Thunderstruck that either Thunderstruck or its subcontractor would need to be at Cannon AFB, because it was Thunderstruck's responsibility to provide the necessary labor to offload and install the signs. (R4, tab 24 at 2) Mr. Mock, from Thunderstruck, stated that because he would be unavailable to meet the delivery truck at Cannon AFB that Friday, 29 July 2016, he would contact his subcontractor to reschedule delivery and send the CO an updated delivery and installation schedule by the end of the day on 25 July (id. at 3).

23. On 26 July 2016, the CO asked Thunderstruck for an updated delivery schedule. Mr. Mock responded that he would update the CO as soon as he had the revised schedule. (R4, tab 24 at 3)

## V. Delivery of the Signs

24. On 27 July 2016, the signs were loaded onto a freight truck at the factory in Birmingham, Alabama (app. br. at 2).

25. Thunderstruck was informed by the Air Force that the signs could not be shipped directly to Cannon AFB. As a consequence, Thunderstruck arranged to ship them to an employee's residence in Clovis, New Mexico. (R4, tab 21 at 18, tab 33 at 3)

26. Appellant attached to its complaint three bills of lading. The first attachment was a bill of lading from ABF Logistics, Inc., dated 28 July 2016, indicates that the signs were scheduled to be delivered from Sign Builders, Inc., Birmingham, AL, to Building 1208 at Cannon AFB. The contact person for the shipment was listed as Sgt Lay. The attachment contains a handwritten notation "shipped" at the top. (Compl., attach. 1)

27. The second bill of lading from ABF Logistics, Inc., also dated 28 July 2016, lists the "SHIPPER" as Sign Builders, Inc., Birmingham, AL, and the destination as Thunderstruck Signs, Clovis, NM. The contact person for the shipment is listed as Jason Mock, the owner of Thunderstruck Signs. The copy is difficult to read, but it contains a handwritten notation at the bottom indicating that "this is where we re-routed." (Compl., attach. 2)

28. The final bill of lading is dated 3 August 2016 and lists the shipper as Sign Buildings, Inc., Birmingham, AL, and the consignee as Thunderstruck Signs, Clovis,

4

NM. The contact person is Jason Mock. The attachment contains a handwritten notation stating that "this is the final delivery location." (Compl., attach. 3)

## VI. Initial Attempt to Install the Signs

29. Thunderstruck made arrangements with a local electrician, 3M Electric, to perform the installation once the signs were delivered (R4, tab 25 at 1-2, 5).

30. On 2 August 2016, the CO again asked Thunderstruck for an updated delivery schedule. Thunderstruck responded that the signs would be delivered on 4 August 2016. (R4, tab 24 at 4)

31. On 4 August 2016, the Air Force informed Thunderstruck that if the government did not receive a confirmation and an installation schedule for the signs by 4:00 pm on 5 August 2016, then the Air Force would terminate the contract for cause (R4, tab 22 at 7).

32. Thunderstruck responded later that same day that "the signs are arriving today." Thunderstruck explained that it would need to hire a crane company to complete installation of the signs and would provide an installation schedule to the Air Force as soon as it obtained scheduling information from the crane operator. (R4, tab 22 at 6)

33. On 4 August 2016, the Air Force then informed Thunderstruck that it had until 4:30 pm on 5 August 2016 to provide the schedule for installing the signs or the Air Force would terminate the contract (R4, tab 22 at 6). Mr. Mock responded that "a schedule will be forwarded tomorrow as stated" (*id.* at 5).

34. On the same day, 4 August 2016, Mr. Mock informed the Air Force that the signs arrived in Clovis, New Mexico, at 5:10 pm and "are currently being off loaded at our install crew[']s shop" (R4, tab 22 at 5).

35. On 5 August 2016, at 4:39 pm, the Air Force notified Thunderstruck that it would "proceed with a termination for cause" and directed Thunderstruck to "stop work immediately" (R4, tab 23 at 1).

36. The same day, 5 August 2016 at 5:12 pm, Thunderstruck replied that "the signs are done and ready for install they are going to be delivered to you. We can get the crane on the 17th no sooner. So install can begin that day or we can drop the signs at the base and submit for payment. Not negotiable." (R4, tab 23 at 2)

## VII. Termination for Cause

37. At two different times on 17 August 2016, Thunderstruck requested that the Air Force coordinate with an electrician to install the signs (R4, tab 25 at 5). The Air

Force responded on 18 August 2016, stating "that this contract is going to be terminated for cause and to stop work immediately" (*id.* at 6).

38. On 18 August 2016, the CO, TSgt Andrea Lay, reached out by telephone to Thunderstruck's electrical subcontractor, Mr. Matt Meyers of 3M Electric. Mr. Meyers confirmed that Thunderstruck had contacted him about performing the installation. The CO informed Mr. Meyers that "the Government would not be accepting the signs and we would not be doing business with Thunderstruck Signs any longer." (R4, tab 25 at 1)

39. However, on 29 August 2016, the Air Force gave Thunderstruck a final opportunity to perform. Through electronic and certified mail, the Air Force notified Thunderstruck that if performance was not complete by 14 September 2016, the Air Force would terminate the contract. (R4, tab 31 at 2)

40. Thunderstruck responded on 29 August 2016, stating "we will schedule accordingly with each" (R4, tab 32 at 2).

41. Also on 29 August 2016, Thunderstruck expressed a concern about the availability of a subcontractor to perform the sign installation. However, on 30 August 2016, Thunderstruck emailed the Air Force stating that the "Electrician confirmed he will be able to install no later than the 14th." (R4, tab 32 at 6)

42. The signs were stored at a personal residence in Clovis, New Mexico, near Cannon AFB, from 4 August 2016 until 8 September 2016 (R4, tab 21 at 18).

43. On 8 September 2016, Thunderstruck shipped the signs from Clovis, New Mexico to a storage facility in Logan, New Mexico, approximately 65 miles away from Cannon AFB (compl., attach. 4).

44. The day before performance was due, 13 September 2016, Thunderstruck emailed the ombudsman for this contract at the Air Force Installation Contracting Agency (AFICA) that it needed "a few extra days to sort out the pick up of the signs" and that Thunderstruck was "trying to find a shipping company with a fork lift to pick up." Thunderstruck informed the ombudsman that it had "not reached a mutual agreement" with the Air Force regarding the new delivery date, and that Thunderstruck was "having trouble with the shipping company picking up the signs which are 60 miles north of Cannon AFB due to the AFB not allowing delivery to the base itself." (R4, tab 33 at 2-3)

45. The ombudsman replied on 14 September 2016, stating "Please work any issues meeting contracted terms and conditions with the contracting officer" (R4, tab 33 at 1-2). However, Thunderstruck did not contact the CO regarding the delivery of the signs or to request a further extension.

6

46. On 14 September 2016, Thunderstruck did not deliver the signs.

47. On 15 September 2016, the CO initiated the process to terminate the contract for cause and consulted with her unit's leadership as well as AFICA (R4, tab 34 at 4).

48. After consulting AFICA, on 8 November 2016, the CO executed Modification No. P00002 terminating the contract for cause (R4, tab 34 at 7).

## VIII. Appeal of CO's Final Decision

49. On 8 November 2016, the Air Force terminated Contract No. FA4855-15-P-0136 for cause. The Air Force has not accepted performance by the contractor nor paid the contractor any amount of the contract price.

50. On 30 January 2017, Thunderstruck timely appealed the Air Force's termination of the contract for cause with the Board seeking the full contract price of $47,791.16, "plus a 25% cancellation charge" in the amount of $11,947.79, for a total amount of $59,738.95.

51. On 1 March 2017, Thunderstruck filed its complaint. The complaint indicated that on approximately 28 July 2016, "[t]he signs were at this point ready to ship and well ahead of the agreed Sept 14th delivery date." The complaint maintains that the signs were "loaded into the transport truck...and shipped to the base on July 28th 2016." (Compl. at 1)

52. On 22 February 2017, Thunderstruck elected to use the expedited appeal procedure under Board Rule 12.2 and on 10 May 2017 elected to convert its appeal to a Board Rule 12.3 proceeding (Bd. order dtd. 15 May 2017). The only matter before the Board is whether the Air Force's termination of the contract for cause was proper.

## DECISION

## I. Whether Default Termination Was Justified

### A. Standard of Review of Default Termination

"[A] default termination is a drastic sanction which should be imposed (or sustained) only for good grounds and on solid evidence." *Lisbon Contractors, Inc. v. United States*, 828 F.2d 759, 765 (Fed. Cir. 1987) (quoting *J.D. Hedin Constr. Co. v. United States*, 408 F.2d 424, 431 (Ct. Cl. 1969)). Though this is an appeal brought by Thunderstruck, because a termination for default is essentially a government claim, the government bears the burden of proving, "by a preponderance of the evidence, that a termination for default was justified." *DayDanyon Corp.*, ASBCA No. 57681, 15-1 BCA ¶ 36,073 at 176,151; *Keystone Capital Services*, ASBCA No. 56565, 09-1 BCA ¶ 34,130 at 168,753 (citing *Lisbon Contractors*, 828 F.2d at 765). "If the government establishes a prima facie case

7

justifying the termination, the burden shifts to the contractor to prove the default was excusable." *Truckla Services, Inc.*, ASBCA No. 57564, 17-1 BCA ¶ 36,638 at 178,444 (citing *ADT Constr. Grp., Inc.*, ASBCA No. 55358, 13 BCA ¶ 35,307 at 173,312).

## B. Government Has Made a Prima Facie Showing of Default

In this appeal, the default clause of the contract establishes the possible grounds for a termination for default. *AEON Group, LLC*, ASBCA Nos. 56142, 56251, 14-1 BCA ¶ 35,692 at 174,751. Specifically, the contract incorporates FAR clause 52.212-4(m), which provides that the government has the authority to terminate the contract for cause "in the event of any default by the Contractor, or if the Contractor fails to comply with any contract terms and conditions" (finding 4). Neither party disputes that Thunderstruck failed to deliver and install the signs by 14 September 2016, the final deadline established by the CO (finding 46). Therefore, we conclude that the government has made a prima facie showing of default. *Pyrotechnic Specialties, Inc.*, ASBCA No. 57890, 17-1 BCA ¶ 36,696 at 178,691 (citing *DayDanyon Corp.*, ASBCA No. 57611 *et al.*, 14-1 BCA ¶ 35,507 at 174,039 ("A contractor's failure to make timely delivery of agreed-upon goods establishes a prima facie case of default.")).

Having concluded that the government has made a prima facie showing of default, we next address whether Thunderstruck has demonstrated that its default was excusable, caused by the government's material breach, or that the CO's termination decision was arbitrary, capricious or an abuse of discretion. *Pyrotechnic*, 17-1 BCA ¶ 36,696 at 178,691; *see also U.S. Coating Specialties & Supplies, LLC*, ASBCA No. 58245, 15-1 BCA ¶ 35,957 at 175,707.

## C. Whether Thunderstruck's Default was Excusable

### i. The Parties' Contentions

The Air Force contends that Thunderstruck repeatedly failed to deliver and install the signs in accordance with the government's schedule, and that default is justified because Thunderstruck failed to meet the 14 September 2016 final delivery date (gov't reply br. at 1). The government acknowledges that it repeatedly extended the schedule, and issued a stop work instruction, before unilaterally issuing a final deadline by email and certified letter to Thunderstruck (gov't br. at 9; finding 39). However, the government maintains that the new deadline was reasonable and that Thunderstruck's failure to install the signs by the final delivery date was not excusable (gov't br. at 8-10).

In response, Thunderstruck contends that it was prepared to perform by 5 August 2016, but was unable to complete the installation because the Air Force refused to cooperate with its subcontractor (app. br. at 3). With respect to the 14 September 2016 final delivery date, Thunderstruck contends that the Air Force's history of delay, along with its willingness to extend the delivery deadlines to account for the delays, makes the

Air Force's default termination unreasonable under the circumstances (app. br. at 5). Thunderstruck also contends that the government's stop work order and subsequent refusal to arrange access for Thunderstruck's electrical subcontractor effectively prevented Thunderstruck from performing within the final deadline established by the Air Force. Specifically, Thunderstruck contends that the 14 September date would have been reasonable, had the Air Force not refused delivery on 5 August 2016. Thunderstruck argues that the Air Force's lack of cooperation caused the signs to be re-routed to a different storage location 60 miles away and it was unable to meet the 14 September date because of difficulties encountered in transporting the signs from the storage location. (*Id.*)

### ii. Thunderstruck's Failure to Meet the Final Delivery Deadline was Not Excused

In cases involving delivery schedules, we repeatedly have held that the "action of the parties in agreeing upon a new delivery schedule eliminates from consideration the causes of delay occurring prior to such agreement." *Precision Dynamics, Inc.*, ASBCA No. 42955, 97-1 BCA ¶ 28,846 at 143,892 (quoting *RFI Shield-Rooms*, ASBCA No. 17374, 77-2 BCA ¶ 12,714 at 61,731); *see also Bulova Technologies Ordnance Systems LLC*, ASBCA No. 57406, 14-1 BCA ¶ 35,521 at 174,097 (in agreeing to a new delivery schedule, the contractor erases the ability to raise pre-existing causes of delay).

In seeking to excuse its failure to meet the 14 September 2016 final deadline, Thunderstruck relies repeatedly on government-caused delays that occurred *before* 29 August 2016, the date on which the government set the 14 September 2016 final delivery deadline (finding 39). Specifically, Thunderstruck states that the Air Force "refused to provide required artwork for near [sic] four months" (compl. ¶ 2). While it is true that the government did not provide artwork for the signs until 5 November 2015 (finding 7), well after the specified delivery date of 16 October 2015 (finding 1), this delay has no bearing on whether Thunderstruck was excused from meeting the final deadline. *Precision Dynamics*, 97-1 BCA ¶ 28,846 at 143,892.

Next, Thunderstruck contends that its failure to meet the final deadline was excused by the government's refusal to accept delivery in early August (app. br. at 3). By demanding that Thunderstruck provide the government with an installation schedule with less than 24-hours' notice (finding 33), and forbidding Thunderstruck from delivering and storing the signs on base (finding 25), the government made it difficult for Thunderstruck to install the signs after they were delivered from the manufacturer in Alabama. Then, by issuing a "stop work" order and refusing to cooperate with Thunderstruck's subsequent attempts to install the signs, the government further delayed Thunderstruck from completing performance (finding 35). The Air Force exacerbated the situation when the CO reached out to Thunderstruck's electrical subcontractor to warn them against working for Thunderstruck (finding 38). Although the Air Force's actions certainly delayed the installation of the signs, these delays were erased when a

9

new delivery deadline was established. *Yankee Telecommunication Laboratories, Inc.*, ASBCA No. 25250 *et al.*, 85-1 BCA ¶ 17,786 at 88,876 (upholding default termination based on failure to meet new delivery date after government waived earlier deadline). Thunderstruck cannot rely on the government's conduct in early August to excuse Thunderstruck's failure to perform in September.

### iii. The Government's Final Delivery Date was Reasonable under the Circumstances

In setting a new delivery date, the government must either agree with appellant as to a new delivery schedule or give appellant notice of a new delivery schedule which would be reasonable under the circumstances. *Oklahoma Aerotronics, Inc.*, ASBCA No. 25605 *et al.*, 87-2 BCA ¶ 19,917 at 100,775 (citing *DeVito v. United States*, 413 F.2d 1147 (Ct. Cl. 1969)). In particular, when the government acts unilaterally to notify a contractor of a new delivery schedule, that schedule must be reasonable "from the standpoint of the performance capabilities of the contractor at the time the notice is given." *International Telephone & Telegraph Corp., ITT Defense Communications Division v. United States*, 509 F.2d 541 (1975). For example, in *Oklahoma Aerotronics*, the Board overturned the government's default termination, because the government did not take into account the contractor's performance capabilities at the time it unilaterally set the new delivery schedule. *Oklahoma Aerotronics*, 87-2 BCA ¶ 19,917 at 100,776.

In this appeal, the government contends that Thunderstruck agreed to the new delivery date and that, even if Thunderstruck's acknowledgment was not construed as consent, the date set by the government was reasonable (gov't br. at 9). The contemporaneous email correspondence demonstrates that Thunderstruck agreed to the 14 September 2016 final deadline. Thunderstruck initially responded to the government's email setting forth the final deadline, stating that "we will schedule accordingly with each" (finding 40). Subsequently, Thunderstruck emailed the CO stating that the "Electrician confirmed he will be able to install no later than the 14th" (finding 41). Although Thunderstruck later emailed the ombudsman, stating that Thunderstruck had "not reached a mutual agreement" with the Air Force regarding the new delivery date, Thunderstruck did not raise this concern until the day before delivery was due and never raised it with the CO (findings 44-45).

Even if the parties did not mutually agree on the new delivery date, the government's decision to give Thunderstruck 14 days to complete performance was reasonable under the circumstances. Two weeks was reasonable in light of Thunderstruck's initial assurances that it could meet the new deadline (finding 40) and its subsequent email that its electrician was available (finding 41). It also was reasonable for the government to conclude that two weeks was sufficient time for Thunderstruck to arrange for installation, given that the signs were completed and already had been shipped to New Mexico (finding 34).

10

After it was unable to install the signs in early August, Thunderstruck decided to move the signs from its employee's residence to a storage facility. The new storage facility was located in Logan, New Mexico, more than 60 miles from Cannon AFB (finding 43). Thunderstruck offers no explanation for why it moved the signs to the new location, nor does it explain why it could not have moved the signs to a location closer to Cannon AFB. Although Thunderstruck subsequently informed the ombudsman that Thunderstruck needed additional time to arrange transportation from the storage location to Cannon AFB, make arrangements with an electrical contractor to perform the installation, and procure the necessary equipment to hoist and mount the signs at their locations on base, Thunderstruck did not raise these issues until the day before delivery and never raised them with the CO (findings 41, 44-45). Accordingly, we find that the government's final delivery date was reasonable under the circumstances and that Thunderstruck has not demonstrated that its failure to meet the delivery date was excused.

## CONCLUSION

The appeal is denied.

Dated: 16 August 2017

KENNETH WOODROW
Administrative Judge
Armed Services Board
of Contract Appeals

I concur

JOHN J. THRASHER
Administrative Judge
Chairman
Armed Services Board
of Contract Appeals

11

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA No. 61027, Appeal of Thunderstruck Signs, rendered in conformance with the Board's Charter.

Dated:

JEFFREY D. GARDIN
Recorder, Armed Services
Board of Contract Appeals